■ LORRAINE L. BURNS, Respondent, v CITY OF NEW YORK, Defendant, and PENN CENTRAL CORPORATION, Appellant.—Order, Supreme Court, New York County (Eugene L. Nardelli, J.), entered October 3, 1988, which denied defendant Penn Central's motion for summary judgment pursuant to CPLR 3212, unanimously reversed, on the law, defendant's motion granted, and the complaint dismissed as to defendant Penn Central, without costs.

This slip-and-fall personal injury action is based upon events which allegedly occurred on July 10, 1986. The complaint alleges that plaintiff was injured when she caught her heel in a metal expansion plate embedded in the surface of the pavement while crossing East 44th Street west of Vanderbilt Avenue. She claims that she fell because the metal expansion plate was negligently maintained in a dangerous condition. On September 9, 1987 she commenced this action against the City of New York and Penn Central, alleging that they each have a duty to maintain the expansion plate.

After issue was joined, defendant Penn Central, by notice of motion dated April 21, 1988, moved for summary judgment dismissing the complaint, on the ground that it had no duty to

maintain the metal expansion plate which plaintiff contended caused her injuries; the city was not a party in this motion. In support of its motion, Penn Central submitted extensive documentary evidence including various land grants, deeds and leases detailing the history of the Grand Central Terminal, the surrounding area, and the subterranean area. Penn Central also submitted two prior decisions of Supreme Court, New York County, which granted defendants summary judgment in two unrelated negligence actions, holding that Penn Central and its predecessors had no duty of care with respect to property once owned and operated by them in the vicinity of Grand Central station, including the subject intersection.

The IAS court found that the Metropolitan Transportation Authority (MTA) is Penn Central's "sublessee of the subterranean structures" at the accident site and that Penn Central has "no right or obligation to repair or maintain the property." However, the court went on to state: "[a]lthough defendant submits sufficient documentary evidence concerning its nonownership of the surface of the accident site, this does not conclusively establish, as a matter of law, that the Metal in issue is a part of the surface and is owned by the City, or conversely, is not owned by or the responsibility of Penn Central."

The court denied summary judgment, concluding that Penn Central had not met its burden of proof and that there remained a triable issue as to whether Penn Central owed a duty of care to plaintiff to properly maintain the metal in a safe manner.

As the Court of Appeals has stated "[t]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case". *(Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853 [1985].) Contrary to the conclusion of the IAS court, the sole conclusion to be arrived at on the basis of the record herein is that Penn Central does not have any responsibility to repair or maintain either the site of the alleged fall or the metal expansion plate. Penn Central clearly met its "initial burden of coming forward with admissible evidence * * * [by] reciting the material facts and showing that the cause of action has no merit". *(GTF Mktg. v Colonial Aluminum Sales,* 66 NY2d 965, 967 [1985].)

As the IAS court specifically found, and as acknowledged by

Justices Cahn and Shea in the unrelated negligence actions,* as a result of Penn Central's bankruptcy, all of Penn Central's obligations with respect to rail operations, the operation of Grand Central Terminal and the sublease with the MTA, which provided that the MTA would maintain the properties, were conveyed to, and assumed by, Conrail, while MTA is and remains the sublessee of the subterranean structures. In addition, the parcels of the corner of 44th Street and Vanderbilt Avenue, into which the subject metal expansion plate runs, were sold, in 1976 and 1978, to the Yale Club and the Biltmore Hotel, respectively. These conveyances included the following clause: "All of the Grantor's [Penn Central] right, title and interest, if any in and above the surface and to the center line, of any public street, road or avenue abutting the above-described property."

Therefore, Penn Central has conclusively established that it had no interest in the subject metal expansion plate nor did it have any responsibility to maintain the plate. Thus, as a matter of law, Penn Central owed no duty to plaintiff.

Once Penn Central submitted documents which satisfied its burden of proof, it was incumbent upon plaintiff to " 'demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for [her] failure so to do' ". (GTF Mktg. v Colonial Aluminum Sales, 66 NY2d, supra, at 968, quoting Zuckerman v City of New York, 49 NY2d 557, 560; see also, Oates v Marino, 106 AD2d 289, 291 [1st Dept 1984].) The affidavit submitted by plaintiff's counsel failed to do so and further failed to show that any triable issue of fact exists with regard to any duty owing to plaintiff by Penn Central. (See, Pulka v Edelman, 40 NY2d 781, 783-784, 786 [1976]; Balsam v Delma Eng'g Corp., 139 AD2d 292, 296-298 [1st Dept 1988].) Thus, the IAS court erred when it denied Penn Central's motion for summary judgment dismissing the complaint. Concur—Sullivan, J. P., Carro, Milonas, Ellerin and Wallach, JJ.

---

* Campbell v Penn Cent. Corp., index No. 1479/84 (Sup Ct, NY County 1984); Amato v City of New York, index No. 91513/84 (Sup Ct, NY County 1984), respectively.